UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KODAK GRAPHIC COMMUNICATIONS
CANADA COMPANY, AS SUCCESSOR TO
CREO INC.,

                DECISION & ORDER

          Plaintiff,

                08-CV-6553T

          v.

E. I. DU PONT DE NEMOURS AND
COMPANY,

          Defendant.
_____

        Plaintiff Kodak Graphic Communications Canada Company ("KGCC"), as successor to Creo, Inc., has filed this action seeking (i) a declaratory judgment that defendant E. I. du Pont de Nemours and Co. ("DuPont") breached its contract with KGCC and (ii) damages as a result of the breach.  (Docket # 1).  Currently pending before this Court is defendant's motion to compel KGCC to produce documents in response to two contention interrogatories.  (Docket # 78).  The following constitutes this Court's decision and order on the motion.

**FACTUAL BACKGROUND**

        In 2002, DuPont and KGCC (then Creo) entered into a written agreement for the development of color filters for flat screen televisions and computer monitors (the "Agreement").  On December 8, 2008, KGCC filed the instant action, seeking damages and a declaratory

judgment that DuPont had breached the Agreement and KGCC had not.  (Docket # 1).[1]

Specifically, the Complaint asserts that DuPont terminated the agreement for "its own convenience" and not because of any breach or default by KGCC.  (*Id*. at ¶ 55; *see also* ¶ 3).

DuPont filed an Answer and Counterclaim on May 13, 2009, which seeks a declaratory judgment that DuPont terminated the Agreement for cause and is entitled to damages as a result of KGCC's breach.  (Docket # 9 at ¶¶ 46-66).  In its Answer to Counterclaim, KGCC asserted various affirmative defenses, such as, failure to mitigate damages, waiver, estoppel, unclean hands and commercial impracticability.  (Docket # 13).

       Currently pending before this Court is DuPont's motion to compel KGCC to respond to those portions of two contention interrogatories demanding the identification of certain documents.  (Docket # 78).  The relevant background concerning the dispute is the following.

       DuPont served KGCC with a notice of deposition under Rule 30(b)(6) of the Federal Rules of Civil Procedure that sought KGCC to designate a witness or witnesses to testify on its behalf concerning eleven specified topics.  (Docket # 78-2, Exhibit ("Ex.") 1).  KGCC objected to designating a witness for certain of the topics, two of which were Topic Nos. 2 and 11.  (*Id*. at Ex. 2).  Following discussion over the objections, the parties agreed that KGCC would respond to Topic Nos. 2 and 11 of the 30(b)(6) notice as contention interrogatories.  (*See* Docket # 83 at 1).  The parties reached no agreement, however, on the identification of documents sought in the requests.

---

[1] This Court previously issued a Report and Recommendation summarizing the factual allegations in KGCC's complaint.  (Docket # 93).  Familiarity with that opinion is assumed.

> Topic No. 2 requests KGCC respond to:
>
> What KGCC contends DuPont's reasons were for terminating the June 3, 2002 Agreement, the 9th Revision dated October 22, 2007, and/or the Memorandum of Understanding dated October 29, 2007. The complete basis and support for each of KGCC's contentions with respect to each reason, *and any documents that KGCC claims supports* [sic] *its contentions as to each reason*.

(Docket # 78-2, Ex. 1 (emphasis added)). Topic No. 2 is substantially similar to a previous interrogatory to which KGCC responded. (Docket # 83-1, Ex. B at 13-15). Specifically, Interrogatory No. 9 of DuPont's First Set of Interrogatories asked KGCC to:

> Identify each and every basis for [y]our contention that DuPont terminated the Marketing and Purchase Agreement for reasons other than a default by [KGCC] or breach of a material term by KGCC, and identify each witness and the specific documents, if any, that you contend support your contention.

(Docket # 83-1, Ex. B. at 13). KGCC answered, "DuPont sought to terminate the [Agreement] for its own convenience for one or more of the following reasons" and identified six reasons ranging from "the downturn in the flat panel display market that occurred in 2008" to "DuPont was unable to formulate, design and manufacture film to meet CPT's[2] specifications." (Docket # 83-1, Ex. B at 14-15). KGCC concluded its answer with the representation that "KGCC expects that these points will be substantiated by discovery, which is ongoing, and that after discovery, it will be able to identify which witness[es] and documents support these contentions." (*Id*. at 15).

---

[2] CPT refers to a DuPont customer that had a separate agreement to purchase from DuPont some of the equipment that KGCC agreed to supply DuPont under the Agreement. (*See* Docket # 9 at ¶ 12).

> Topic No. 11 of the 30(b)(6) notice requests KGCC provide:
>
> The entire basis for each of the affirmative defenses KGCC has asserted in response to DuPont's counterclaims, *and any documents that KGCC claims supports* [sic] *any of its contentions on each such affirmative defense.*

(Docket # 78-2, Ex. 1 (emphasis added)).

As noted above, KGCC agreed to respond to both Topic Nos. 2 and 11 as contention interrogatories by providing the factual bases for its contentions, but objected to identifying all documents that support those contentions on the grounds that doing so would reveal attorney work product. According to KGCC, all the requested documents have already been produced in discovery, and many of them were in fact created by DuPont. (Docket # 83 at 1, 10). KGCC contends that compliance with this request would reveal to DuPont the documents that KGCC's counsel has selected and compiled – from a much larger group of documents that DuPont already has produced – to support its theories why DuPont terminated the Agreement. KGCC further maintains that compliance would be unduly burdensome because it would require KGCC to review the approximately 600,000 pages of documents produced in discovery, an undertaking that KGCC's counsel estimates would involve approximately 800 attorney hours. (Docket # 83-1 at ¶ 4).

At oral argument, the parties reached an agreement to resolve the dispute concerning Topic No. 11. (Docket # 90 at 21-22). KGCC agreed to respond in writing to Topic No. 11 by identifying the facts that support its affirmative defenses. (*Id*. at 24). With respect to the request for supporting documents, KGCC agreed to identify the documents upon which it relied at the time it asserted its affirmative defenses in its answer. (*Id*.). DuPont agreed to this

compromise on the condition that it would not be precluded from seeking further judicial relief following the document identification if it believed that additional identification or production was necessary to understand one or more of KGCC's affirmative defenses.[3]  (*Id*. at 25-26).

In view of the parties' agreement concerning Topic No. 11, this decision addresses only their dispute concerning the identification of documents requested in Topic No. 2.

## DISCUSSION

The Federal Rules of Civil Procedure explicitly permit the use of contention interrogatories.  Parties may serve interrogatories that request information regarding a party's "contention that relates to fact or the application of law to fact."  *See* Fed. R. Civ. P. 33(a)(2); *see also Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 369 ( S.D.N.Y. 2010) ("contention interrogatories are a perfectly acceptable form of discovery").  As one court has noted:

> [T]he phrase "contention interrogatory" is used imprecisely to refer to many different kinds of questions.  Some people would classify as a contention interrogatory any question that asks another party to indicate what it contends.... Another kind of question ... asks an opposing party to state all the facts on which it bases some specified contention.  Yet another form of this category of interrogatory asks an opponent to state all the evidence on which it bases some specified contention.  Some contention interrogatories ask the responding party to take a position, and then to explain or defend that position, with respect to how the law applies to facts.  A variation on this theme involves interrogatories that ask parties to spell out the legal basis for, or theory behind, some specified contention.

---

[3] In the event that KGCC has not responded to Topic No. 11 as agreed, it is directed to do so by no later than fourteen days from the date of this Order or as otherwise agreed to with opposing counsel.

*National Acad. of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 n.5 (C.D. Cal. 2009) (quoting *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985)).

Contention interrogatories are used most commonly at the end of discovery to narrow issues for trial. *Pasternak v. Kim*, 2011 WL 4552389, *3 (S.D.N.Y. 2011). Indeed, some courts have noted that they should not be used as devices to obtain early disclosure of trial witnesses and exhibits – disclosures that are more properly addressed through the district court's pretrial order. *Id*. at *4. *See also Tribune Co. v. Purcigliotti*, 1997 WL 540810, *2 (S.D.N.Y. 1997) ("Plaintiffs will not be required to parse through documents that have already been produced to defendants, which defendants are in a position to review themselves, in order to explain the obvious. Any specific documents plaintiffs intend to rely upon at trial will be identified in the Pretrial Order.").

KGCC has agreed to answer Topic No. 2 as a contention interrogatory, representing that it will detail the factual bases for its theories regarding the reasons why DuPont terminated the Agreement for its convenience. Thus, the parties do not dispute the propriety of contention interrogatories; nor do they dispute the propriety of disclosure of relevant documents. KGCC does not maintain that documents supporting its theories are not discoverable – indeed, it notes that all documents relevant to its theories why DuPont terminated the Agreement have been produced in discovery and that most "c[a]me from DuPont's own files." (Docket # 83 at 10). The narrow dispute is simply whether KGCC must now identify from the pool of already-produced documents those that support its theories as to each specific reason that DuPont chose to terminate the Agreement or whether doing so would reveal its attorney work product.

The purpose of the attorney work product doctrine is "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). Although that purpose "is not generally promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents," *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003), "the Second Circuit has recognized that the work product doctrine can protect an attorney's selection and arrangement of documents in certain narrow circumstances, despite the fact that the documents themselves are not privileged," *Sec. & Exch. Comm'n v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) (citing *In re Grand Jury Subpoenas*, 959 F.2d 1158, 1166-67 (2d Cir. 1992)). *See also Sec. & Exch. Comm'n v. Collins & Aikman Corp.*, 256 F.R.D. 403, 408 (S.D.N.Y. 2009) (the "selection and compilation of documents may fall within the protection accorded to attorney work product, despite the general availability of documents from both parties and non-parties during discovery"); *McDaniel v. Freightliner Corp.*, 2000 WL 303293, *4 (S.D.N.Y. 2000) ("[m]any lower courts in this circuit and elsewhere have similarly concluded that discovery requests which seek to pry into counsel's selection of certain documents as particularly important or relevant violate the attorney work product doctrine in the absence of a showing of compelling need"; collecting cases).

Not all selections and compilations of documents by counsel are protected from disclosure under the attorney work product doctrine, however. *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d at 386. Rather, to justify non-disclosure,

"the party asserting the privilege must show 'a real, rather than speculative, concern' that counsel's thought processes 'in relation to pending or anticipated litigation' will be exposed through disclosure of the compiled documents." *Id*. (conclusory affidavits insufficient to demonstrate non-speculative concern) (quoting *Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir. 1987)). *See also Hendrick v. Avis Rent A Car Sys., Inc.*, 916 F. Supp. 256, 259 (W.D.N.Y. 1996). In addition, the selection and compilation exception may not apply where equities weigh against it, such as where the documents are not otherwise available to the requesting party. *Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d at 680; *Sec. & Exch. Comm'n v. Collins & Aikman Corp.*, 256 F.R.D. at 408-409 ("equity favors rejection of work product protection to a compilation of documents that are otherwise unavailable or beyond reasonable access") (internal quotation omitted).

"As explained by the Second Circuit, the touchstone of the work-product inquiry is whether the discovery demand is made 'with the precise goal of learning what the opposing attorney's thinking or strategy may be.'" *Sec. & Exch. Comm'n v. Morelli*, 143 F.R.D. 46-47 (quoting *In re Grand Jury Subpoenas*, 959 F.2d at 1166). For this reason, the "highest level of protection applies to a compilation only if it is organized by legal theory or strategy." *Collins & Aikman Co.*, 256 F.R.D. at 410; *see also*, *Morelli*, 143 F.R.D. at 47 (disclosure of an attorney's legal strategy runs counter to "the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases") (quoting *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir.), *cert. denied*, 474 U.S. 903 (1985)); *McDaniel v. Freightliner Corp.*, 2000 WL 303293 at *2, 6 (work product protection applies to documents counsel selected by reviewing and culling files of other attorneys in similar

litigations).  By contrast, "compilations of documents that [merely] support the factual allegations of a complaint reveal[] no more than that already revealed by the filing of the complaint."  *Collins & Aikman Co.*, 256 F.R.D. at 410.

Where the requesting party already has "all relevant, non-privileged evidence," its demand that the opposing party disclose its attorney's selection and compilation of certain documents is often a thinly-veiled effort "to ascertain how [counsel] intends to marshal the facts, documents and testimony in [his] possession, and to discover the inferences that [counsel] believes properly can be drawn from the evidence it has accumulated."  *Morelli*, 143 F.R.D. at 47 (barring 30(b)(6) deposition on grounds that it would invade work product protection and reveal "attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case" – material that is "accorded almost absolute protection from discovery") (quoting *Sporck v. Peil*, 759 F.2d at 316).  *See also New York v. Solvent Chem. Co.*, 214 F.R.D. 106, 111-12 (W.D.N.Y. 2003) (same); *American Nat'l Red Cross v. Travelers Indem. Co.*, 896 F. Supp. 8, 13 (D.D.C. 1995) (the "attorneys, it can be assumed, have spent much of their time culling through hundreds of thousands of pages of documents, transcripts, and interrogatory responses, in an effort to select and compile the facts and documents relevant to each separate affirmative defense – in effect, to marshal the evidence in support of each of [defendant's] contentions[;] [t]hese activities are protected from discovery by the work-product doctrine").  Where discovery involves voluminous quantities of documents, however, considerations of fairness and efficiency have sometimes led courts to require production of compilations of documents, particularly where the documents relate to factual allegations, rather than legal theories.  *See, e.g.*, *Collins & Aikman Co.*, 256 F.R.D. at 411 ("[i]t is patently inequitable to

require a party to search ten million pages to find documents already identified by its adversary as supporting the [factual] allegations of a complaint").

The starting point for my determination whether KGCC should be required to identify the documents demanded in Topic No. 2 is whether such identification involves a compilation of documents organized by legal theory or strategy, rather than by factual allegation. KGCC represents that it involves the former.  (Docket # 83 at 8).  Although the Complaint contains thirty-seven paragraphs of factual allegations pertaining to the Agreement, the parties' performance under the Agreement and DuPont's termination of the Agreement, none of the allegations concern DuPont's alleged reasons for terminating the contract.  (*See* Docket # 1 at ¶¶ 10-37).  In the paragraphs that constitute its legal claims, KGCC asserts merely that it did not breach the Agreement and that DuPont terminated "for its own convenience."  (*Id*. at ¶¶ 55, 69). Nowhere in the Complaint does KGCC specify any reasons for DuPont's termination beyond the general rubric of "convenience."

Topic No. 2 of DuPont's 30(b)(6) notice requests KGCC to identify "any documents that KGCC claims supports [*sic*] its contentions as to *each* reason" that DuPont terminated the Agreement.  (Docket # 78-2, Ex. 1 (emphasis added)).  As noted *supra*, KGCC has already identified six purported reasons in its answer to an interrogatory seeking similar information.  (Docket # 83-1, Ex. B at 14-15 ("Identify each and every basis for your contention that DuPont terminated the [Agreement] for reasons other than a default by KGCC or breach of a material term by KGCC").  Moreover, KGCC has agreed to answer Topic No. 2 to the extent that it also requests KGCC to identify the basis and support for each of those reasons.  The question is whether KGCC must identify all the documents that it has compiled in support of its *theory*

10

that DuPont terminated the Agreement for each of the identified reasons. Counsel for KGCC has represented that all of the documents compiled have been produced and that the majority of them came from DuPont's files.[4]

I find that the documents at issue are indeed counsel's compilations of documents organized by legal theory and thus are entitled to protection as attorney work product. Having made that finding, the next issue is whether equitable considerations nonetheless counsel in favor of disclosure. DuPont argues that they do because the volume of discovery (approximately 600,000 pages) poses a risk that DuPont will be surprised at trial by KGCC's reliance on one or more of its documents. In my estimation, that risk – however genuine – is not substantial enough to justify invasion of the work product protection. The reasons that KGCC has identified in response to the earlier interrogatory are far from inscrutable, and KGCC's response to Topic No. 2 will provide further amplification. This Court perceives no reason why DuPont cannot review the documents produced, particularly its own documents, to determine those that relate to the identified reasons.[5] *See Tribune Co. v. Purcigliotti*, 1997 WL 540810 at *2 ("[p]laintiffs will not

---

[4] KGCC's counsel further represents that in order to comply with the request to identify "any documents" supporting its theory of each reason why DuPont terminated the Agreement, KGCC would be required to review every document produced in discovery; he estimates that review of DuPont's documents alone would take approximately 800 attorney hours. (Docket # 83 at 10; # 83-1 at ¶ 4). The burden of such an undertaking, counsel maintains, constitutes a separate justification for denying the pending motion to compel. While some authority supports KGCC's contention, *e.g.*, *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. at 369 ("[d]efendants' requests, insofar as they seek every fact, every piece of evidence, . . . rather than . . . certain principal or material facts, pieces of evidence . . . supporting the identified allegations, are overly broad and unduly burdensome"), my opinion is premised on the finding that the requested production would reveal attorney work product – a disclosure that is not warranted by equitable considerations or "substantial need" within the meaning of Fed. R. Civ. 26(b)(3)(A)(ii).

[5] Of course, to the extent that KGCC's supporting documents come from its files, rather than DuPont's, Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure requires it to supplement its initial disclosures under Rule 26(a)(1)(A)(ii) to provide a copy of, or describe by category and location, all documents within its possession, custody or control that it may use to support its claims (unless the use would be solely for impeachment). *See* Fed. R. Civ. P. 26.

be required to parse through documents that have already been produced to defendants, which defendants are in a position to review themselves, in order to explain the obvious"); *accord Pasternak v. Kim*, 2011 WL 4552389 at *4; *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 273 F.R.D. at 369. The danger of unfair surprise at trial is further diminished by the district court's pretrial order, which will require KGCC to identify its exhibits prior to trial.

Finally, in its motion papers, DuPont noted that KGCC did not object to that portion of Interrogatory No. 9 that sought KGCC to identify "the specific documents, if any, that you contend support your contention" that DuPont terminated the Agreement for reasons other than a default or breach by KGCC. (Docket # 85 at 3-4). Although KGCC did not produce responsive documents, it answered the interrogatory by representing:

> KGCC expects that these points will be substantiated by discovery, which is ongoing, and that after discovery, it will be able to identify which witness and documents support these contentions.

(Docket # 83-1, Ex. B at 15). At oral argument, KGCC maintained that its response was not intended to, and did not, waive any work product protection to which the documents were otherwise entitled because KGCC's general objections included a privilege objection. (*Id*. at 2). That particular issue is not before the Court on this motion, and I do not reach it.

In sum, for the reasons discussed above, I conclude that KGCC should not be required to produce compilations of documents in response to Topic No. 2.

## CONCLUSION

For the reasons stated above, DuPont's motion to compel KGCC to produce documents in response to two contention interrogatories **(Docket # 78)** is **GRANTED in PART**

**and DENIED in PART**.  By no later than fourteen (14) days from the date of this Order, or as otherwise agreed to by the parties, KGCC shall respond to Topic Nos. 2 and 11 as outlined herein.

**IT IS SO ORDERED.**

                                                *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                               United States Magistrate Judge

Dated: Rochester, New York
        February  8 , 2012