UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KODAK GRAPHIC COMMUNICATIONS CANADA
COMPANY, AS SUCCESSOR TO CREO INC.

                 Plaintiff,              08-CV-6553

         v.                         **DECISION AND
ORDER**

E.I. DU PONT DE NEMOURS AND COMPANY

                 Defendant.
_____

## <u>INTRODUCTION</u>

    Plaintiff, Kodak Graphic Communications Canada Company, as successor to Creo Inc. ("Kodak"), filed the instant action for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing against E.I. DuPont de Nemours and Company ("DuPont") on December 8, 2008. The complaint alleges claims relating to an agreement and a related revision ("Revision 9") and Memorandum of Understanding ("MOU") between the parties for the development and production of color filters for liquid crystal displays ("LCD color filters"). (Docket No. 1.)  On May 13, 2009, DuPont answered the complaint and asserted counterclaims for a declaratory judgment, breach of contract and unjust enrichment. (Docket No. 9.)

    Kodak now moves for partial summary judgment arguing that (1) it did not breach Revision 9 by failing to deliver the product by the dates set forth in the contract, (2) the time requirements were not material terms of the contract, and (3) DuPont waived its right

to insist on strict adherence to the time requirements. DuPont opposes the motion contending, *inter alia*, that there are material issues of fact for trial and that Kodak's interpretation of Revision 9 is incorrect as a matter of law.  For the reasons set forth herein, Kodak's motion for summary judgement is denied.

## BACKGROUND

The following facts are taken from the parties' submissions pursuant to Local Rule 56 (a) and the entire record and are viewed in the light most favorable to DuPont, the nonmoving party.  Kodak and DuPont entered into an agreement, the Agreement for Exclusive Marketing Rights in and Purchase of Equipment for LCD Color Filters, in June 2002.  This agreement was revised several times, including by Revision 9, effective October 22, 2007, which is the subject of this dispute. Revision 9 covers the design and production by Kodak of four Early Production Systems ("EPS units") to be purchased by DuPont and supplied to its customers.  Shortly after executing Revision 9, DuPont contracted with a third party customer, Chunghwa Picture Tubes Ltd. ("CPT"), for the purchase of the EPS units, to be delivered to CPT in 2009.

The pertinent part of the disputed provision of Revision 9, Paragraph D, reads:

> Delivery requirement: 1st Unit by October 22, 2008, FOB Vancouver.
> a. 2nd Unit 2 weeks later (November 5, 2008)
> b. 3rd Unit 2 weeks later (November 19, 2008)
> DuPont reserves the right to change the date of 2nd and 3rd shipment (beyond two week

```
                time frame, based on CPT's requirements)
             c. 4th Unit Dec. 3, 2008

        Time is of the essence. If any change in delivery is
        discovered, [Kodak] must communicate immediately to
        DuPont. Both parties will work in good faith and make
        commercially  reasonable  efforts  which  may  include
        without   limitation   expediting   deliveries   from
        subcontractors, overtime, and additional shifts to meet
        the committed delivery dates.
```

Both during and after the negotiations of Revision 9, DuPont discussed with Kodak the importance of the timing provisions to ensure the ultimate delivery to CPT on schedule in 2009. DuPont states that it would not have entered into Revision 9 without Kodak's commitment to the dates outlined in Paragraph D.

Kodak and DuPont had previously negotiated contracts for the design and delivery of prototypes (called "LFP machines"), which Kodak claims were less complex than the EPS units. DuPont contends that the EPS units, although different in design, were not significantly more complex, as they were an "extension of known technology." Kodak failed to produce the LFP machines according to the agreed-upon time line for that product, but DuPont nonetheless accepted delivery of those machines. The LFP machines were subject to a separate contract, which did not include the same delivery requirement language as Revision 9, Paragraph D.

Kodak represented to DuPont at the time they negotiated Revision 9 that it was capable of designing and producing the EPS units within the agreed-upon schedule in Revision 9, Paragraph D.

Kodak further represented that the design for the EPS machine was 90% complete, which DuPont now characterizes as a misrepresentation.  DuPont recognized early on that the schedule for producing the EPS units was "aggressive", but Kodak nonetheless committed to the dates outlined in Paragraph D.

Kodak experienced delays in production early in 2008, but continued to assure DuPont that it was committed to remaining on schedule.  Kodak also assured DuPont in June 2008 that it was "doing [its] best to get back on track" and that it "fully underst[ood] the importance of the delivery schedule."  DuPont was assured that despite setbacks, Kodak was working to mitigate delays and to meet the delivery schedule.

When notified of possible delays throughout early 2008, DuPont did not inform Kodak that it would consider any delay a breach of Revision 9, but it continued to stress the importance to it and to CPT of remaining (or getting back) on schedule.  DuPont offered to assist Kodak to get back on schedule and continued to "encourage anything that could be done to accelerate the delivery."

By June 30, 2008, DuPont was aware that delays in delivery were probable.  It continued to emphasize to Kodak the importance of the delivery schedule.  DuPont then spoke with CPT regarding the probable delays.  CPT was upset with the possibility of any delay, but agreed to a short extension of time.

However, additional setbacks occurred as late as October 2008

4

and the projected delivery schedule for the second, third and fourth units were further delayed. As late as October 16, 2008, Kodak's new projected delivery for the first EPS unit was January 15, 2009.  DuPont believed that even this projection was "just a guess."

Then, on October 20, 2008, DuPont's Steven Santoleri emailed Eran Elizur and John Kalbfleisch at Kodak to inform them that "the continued pattern of further delivery delays is jeopardizing the entire project with our customer."  He stated that although DuPont was able to negotiate a revised delivery schedule with the customer, "Dupont considers delivery dates as material terms of the contract. Failure to meet delivery time can be considered default and breach of the contract."  Then, on October 27, 2008, DuPont notified Kodak that it was in breach of the delivery terms of Revision 9 because it failed to deliver the first EPS unit on October 22, and had not negotiated a modification of the agreement. DuPont notified Kodak that it considered this a material breach of the contract and did not waive any rights with respect to this breach.

Following this notification, DuPont continued to work with Kodak and admits that it would have accepted delivery of the EPS units if Kodak were to have committed to firm delivery dates. It notified Kodak that it was willing to entertain a proposal by Kodak to cure the breach within 30 days. The parties were continuing to

discuss options to repair the relationship and to move forward with the project.  As of a November 4, 2008 meeting, the delivery dates were still not firm, but Kodak asserted that it believed it was not in breach of the contract.   At the time, DuPont was also considering all of its options under the contract.

On December 1, 2008, DuPont sent a notice of termination to Kodak.  The notice stated that Kodak breached Revision 9 by failing to deliver the first EPS unit by October 22, 2008, and failed to cure the breach within 30 days as requested by DuPont, with an assurance of a firm delivery date.  Kodak filed this lawsuit on December 8, 2008.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. See Scott v. Harris, 550 U.S. 372, 379; 127 S.Ct. 1769, 1776 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. See Scott, 550 U.S. at 379; 127 S.Ct. at 1776 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475

U.S. 574, 586-587).

Kodak argues that it complied with the terms of Revision 9 by "advising DuPont immediately in the event of a delay and making commercially reasonable efforts to minimize the delay," which, it contends, is consistent with the meaning of the "communication" and "commercially reasonable efforts" provisions in Paragraph D.  Pl. Mem. of Law at 6, Docket No. 105.  Further, Kodak contends that even if it had breached Revision 9 by failing to deliver the EPS units by the specified dates, the breach was not material.  Lastly, Kodak argues that DuPont waived its rights to insist on strict compliance with the delivery dates set forth in the agreement.

For the reasons discussed below, the Court finds that Kodak's interpretation of Revision 9, Paragraph D is not consistent with the plain meaning of that provision.  Further, the Court finds that there are issues of fact which preclude summary judgement on the remaining issues.

**1. Interpretation of Revision 9**

Revision 9, Paragraph D reads:

Delivery requirement: 1st Unit by October 22, 2008, FOB Vancouver.
   a. 2nd Unit 2 weeks later (November 5, 2008)
   b. 3rd Unit 2 weeks later (November 19, 2008)
      DuPont reserves the right to change the
      date of 2nd and 3rd shipment (beyond two
      week time frame, based on CPT's
      requirements)
   c. 4th Unit Dec. 3, 2008

Time is of the essence. If any change in delivery is

discovered, [Kodak] must communicate immediately to DuPont. Both parties will work in good faith and make commercially reasonable efforts which may include without limitation expediting deliveries from subcontractors, overtime, and additional shifts to meet the committed delivery dates.

It is not disputed that Kodak did not deliver the first unit on October 22, 2008 and that the delivery dates had expired for the second and third units.  Kodak argues, however, that it complied with the terms of Paragraph 9 because "the parties did not intend the original delivery dates for the EPS units to be inalterable." Pl. Mem. of Law at 8.  Kodak argues that the language following the "time is of the essence" clause contemplates that delays may occur and that the parties agreed only to "make commercially reasonable efforts" to minimize such delays. Kodak further argues that it met its obligations under Paragraph D by immediately notifying DuPont of an anticipated delivery delay and by using commercially reasonable efforts to minimize the delay by, "expedit[ing] delivery of parts from existing vendors and subcontractors, add[ing] new suppliers to expedite delivery of parts, implement[ing] a 7-day work week, a second shift, and overtime, perform[ing] necessary research and development on a round-the-clock basis, add[ing] personnel to support product integration and add[ing] management support in production." Pl. Mem. Of Law at 12; Pl. Statement of Undisputed Material Facts ("Pl. Facts")[1] at ¶20, Docket No. 105.

---

[1]DuPont's Response and Statement of Additional Material Facts with Evidentiary Support, Docket No. 111-1, will be referred to as "Def. Facts."

DuPont contends that the delivery dates were firm and that any change in those dates required a negotiated and signed modification by the parties to the agreement, as set forth in section 33.4 of the original agreement. Def. Mem. of Law at 14-15;  Exhibit 1 to Pl. Facts at page 25.  In support of its argument, DuPont cites the "time is of the essence" clause and argues that the clause regarding using "commercially reasonable efforts" to meet "committed delivery dates" was an additional promise regarding the already committed-to delivery dates, the first of which was October 22, 2008.

Where the terms of a contract are unambiguous, contract interpretation is a question of law, appropriate for determination on a motion for summary judgment. See William Blair and Co. v. Fl. Liquidation Corp. 830 N.E.2d 760, 769-70, (Ill. App. Ct. 2005).[2] "A contact is not ambiguous, however, if a court can ascertain its meaning from the general contract language." Id. Ambiguity is also a question of law for the court to determine, and the mere fact that the parties do not agree on the meaning of a particular provision, does not render the term ambiguous. Id. Here, while the parties disagree on the meaning of Revision 9, Paragraph D, they agree that it is unambiguous.  The Court also finds that Revision 9, Paragraph D is unambiguous and that DuPont's reading of this

---

[2]The parties agree that Illinois law should be applied to this case as set forth in Paragraph 33.3 of the agreement.

provision is consistent with the plain meaning of its terms, read in the context of the agreement as a whole.  See La Throp v. Bell Federal Sav. & Loan Ass'n, 370 N.E.2d 188, 191 (Ill. 1977) ("The intent of the parties to a contract must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by viewing each part in light of the others.").

Here, while Kodak would interpret the words "to mitigate any delay" into Paragraph D, such that it would read: "Both parties will work in good faith and make commercially reasonable efforts to mitigate any delay," those words are conspicuously absent from Paragraph D.  A plain reading of the second clause, giving full effect to the "time is of the essence" clause, is that the agreed-upon delivery dates were firm and that if Kodak discovered any change to the delivery date (or any other change in delivery) it would communicate that change immediately with DuPont.  Further, the parties would endeavor to meet the agreed-upon dates by working in good faith and using commercially reasonable efforts.  The court does not find Kodak's argument regarding meaning of the terms "delivery requirement" and "committed delivery dates" persuasive. Nothing in Paragraph D suggests that the committed delivery dates were new commitments in the event of a delay.  Rather, a plain reading of this provision is that the committed delivery dates were just that, the dates to which Kodak committed to deliver the EPS

units - to wit, October 22, 2008, November 5, 2008, November 19, 2008 and December 3, 2008.

The fact that DuPont was specifically granted the sole authority to alter the dates for the second and third deliveries supports this interpretation. If Kodak were able to delay a delivery without seeking a modification to Revision 9, the parties would have provided that Kodak could also alter the dates according to its production capabilities.  If the parties intended the delivery dates to be alterable by Kodak, they would have provided for such an event in the language of Paragraph D.

The only reference to any change in delivery is the phrase "If any change in delivery is discovered, [Kodak] must communicate immediately to DuPont." A plain reading of this term is that Kodak must communicate with DuPont if _any_ change in the delivery is discovered, not just a delay in the delivery date. It is reasonable to conclude that DuPont wanted immediate communication even if the change in delivery discovered was an early delivery, because it would likely need to prepare for such an early delivery. Further, if the parties intended this phrase to contemplate only a delay in delivery, they would have drafted language to provide for that event.

In sum, the Court finds that Revision 9, Paragraph D does not contemplate that delays in delivery would be acceptable.  Paragraph D provides for firm delivery dates and provides that "time is of

the essence." That provision also required Kodak to communicate to DuPont if any changes in delivery are anticipated and to use commercially reasonable efforts to meet the committed delivery dates. Accordingly, the Court finds that Kodak breached the terms of Revision 9, Paragraph D by failing to deliver the first three units by the committed delivery dates, without first having obtained a signed modification of Revision 9, Paragraph D, as required by Section 33.4 of the agreement.

## 2. Materiality

Kodak next argues that even if it were found to have breached the delivery requirements of Revision 9, Paragraph D, those provisions were not material terms of the contract, and therefore, this breach would not permit DuPont to unilaterally terminate the contract. See Beverage Realty, Inc. V. Chatham Club, LLC, 2003 WL 444572, at *3 (N.D. Ill. Feb. 21, 2003)(internal citations omitted)("Although failure to perform its contractual duties will subject a party to liability for breach of contract, only its material breach of the contract's terms will also serve to excuse the other party from its own duty of counterperformance. If however the breach is minor, it is compensable only in damages and does not excuse the other contracting party's duty of performance.")

> "In determining whether a breach is material, some Illinois courts have stated that the question is whether performance of the disputed provision was the 'sine qua non of the agreement,' i.e., 'of such a nature and such importance that the contract would not

12

have been made without it.' Other courts have
stated that the question of 'whether a breach
is material, thereby discharging the other
party's duty to perform, is based on the
inherent justice of the matter.' We are
convinced that these cases demonstrate that,
under Illinois law, the materiality inquiry
focuses on two interrelated issues: (1) the
intent of the parties with respect to the
disputed provision; and (2) the equitable
factors and circumstances surrounding the
breach of the provision."

Elda Arnhold and Byzantio, L.L.C. v. Ocean Atlantic Woodland Corp.,
284 F.3d 693, 699-700 (7th Cir. 2002) (citing cases) (internal
citations omitted). Here, the Court finds that there are material
issues of fact as to the intent of the parties with respect to a
delay and the equities surrounding the alleged material breach of
the contract.

Kodak contends that based on the parties prior course of
dealing, the complicated nature of the product, and the parties'
negotiation of Revision 9, it is indisputable that timing
requirements were not the *sine qua non* of the agreement. Pl. Mem.
of Law at 14-15. However, DuPont contends that the parties prior
course of dealing concerned prototypes in earlier stages of the
product, and DuPont's acceptance of late delivery of the
prototypes, is not indicative of the importance of the delivery
requirements in Revision 9. DuPont also contends that it made
clear its intent was that the timing provisions were material and
that it would not have agreed to the terms of Revision 9 without
firm delivery commitments from Kodak. Competing inferences can be

13

drawn from the parties prior dealings and their course of negotiations of Revision 9.  One possible inference is that both parties were aware of possible delays and had previously been successful in negotiating new delivery dates without the need for formal revisions to agreements. Their intent with respect to Revision 9 was to establish delivery dates, with the understanding that such dates were not be material terms of the contract and could be renegotiated.  However, one could also infer that DuPont negotiated to include strict time provisions to avoid any future delays in the production of the EPS units; and that DuPont, while aware that the timetable was aggressive, was assured by Kodak that it was capable of completing the project on time by its acceptance of the firm delivery dates; and that DuPont agreed to Revision 9 based on Kodak's promise to timely deliver the EPS units.

Kodak contends that the parties did not intend the time requirements to be immutable because the project was complicated and the EPS units were "first article builds." Pl. Facts at ¶6. DuPont asserts that the EPS units were not as complex as Kodak contends and that Kodak represented during negotiations that it was capable of building the units within the time frame negotiated. Def. Facts at ¶5, D, 6.  And, while DuPont admits that it recognized the time table to be "aggressive," it received representations from Kodak that the design was near completion during the negotiations of Revision 9 and that Kodak was capable of

14

doing what was necessary to complete the project on time. Def. Facts at ¶5, D, 6-7.  Based on Kodak's representations and the delivery requirement language of Revision 9, DuPont entered into a third party agreement with a customer, CPT, which also contemplated on-time delivery by Kodak to DuPont. Def. Facts at ¶¶J-K.

"[T]he determination of 'materiality' is a complicated question of fact, involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage." Sahadi v. Continental Illinois National Bank & Trust Co., 706 F.2d 193, 196 (7th Cir.1983). "All of these issues must be resolved with reference to the intent of the parties as evidenced in large part by the full circumstances of the transaction, thus making these issues especially unsuited to resolution by summary judgment." Id at 196-7.

Here, because competing and equally reasonable inferences can be drawn from the parties' prior course of dealing and the circumstances surrounding the negotiation of the contract, the Court finds that there are material issues of fact which preclude summary judgment on this issue.  Further, the Court finds that the parties have not adequately addressed the issue of equity, and that

questions remain as to the inherent justice of allowing DuPont to terminate the contract rather than to seek some other remedy for the breach. For example, it is unclear whether DuPont could have successfully negotiated further delays with CPT or whether another, less drastic method of recouping damages for the delay would have been preferable to outright termination of the agreement. Therefore, the Court denies Kodak's motion for summary judgement on the issue of materiality.

### 3. Waiver

Kodak last argues that even if the Court were to find that it breached a material provision of Revision 9 by failing to deliver the first EPS unit by October 22, 2008, "DuPont clearly and unequivocally waived any right to demand strict adherence to those dates." Pl. Mem. of Law at 20.  DuPont contends that it did not waive its rights to strictly enforce the delivery requirement and that there are material issues of fact with respect to whether its actions constitute waiver. Def. Mem. of Law at 24-25.

"Where there is no dispute as to the material facts and only one reasonable inference can be drawn therefrom, it is a question of law whether the facts proved constitute waiver. However, if the facts necessary to constitute waiver are in dispute or if reasonable minds might differ as to inferences to be drawn from undisputed evidence, then the issue becomes a question of fact." Wald v. Chicago Shippers Ass'n, 529 N.E.2d 1138, 1147-1148

16

(Ill.App.Ct. 1998). "Parties to a contract may waive delays in performance by conduct which indicates an intention to regard the contract as still in force and effect." Business Development Services, Inc. v. Field Container Corp., 422 N.E.2d 86, 92 (Ill.App.Ct. 1981). "Where the time fixed by the contract for performance is permitted to pass, both parties concurring, the time of performance thereafter becomes indefinite and one party cannot rescind until full notice and a reasonable time for performance is given." Id. Here, the Court finds that the facts do not unequivocally point in favor of waiver.

Kodak argues, based on DuPont's communications with Kodak after it became aware of possible delays, that DuPont waived its right to insist on strict delivery dates. Specifically, Kodak argues that DuPont acknowledged that Kodak was working to minimize delays and assured Kodak that it had been successful in negotiating a later delivery to its customer, CPT. Pl. Facts at ¶¶17-21, 26. Further, DuPont continued to work with Kodak, knowing delays in delivery were likely, and even after Kodak missed the first delivery date. Pl. Facts at ¶27, 29, 35. Kodak further states that DuPont did not inform Kodak that it would be in breach of revision 9 until October 20, 2008, when Steven Santoleri of Dupont wrote an e-mail to Eran Elizur and John Kalbfleisch of Kodak indicating that "DuPont considers delivery dates as material terms of the contract. Failure to meet delivery time can be considered default and breach

17

of contract." Pl. Facts.  ¶26.

DuPont, for its part, acknowledges that it was aware of possible delays in early 2008, but that Kodak continued to assure Dupont that it was trying to get back on schedule. Def. Facts ¶H. Further, while DuPont did not expressly state in earlier emails that a delivery delay would constitute a breach of Revision 9, it continued to communicate with Kodak that the delivery dates were critical to both DuPont and its customer, CPT. Def. Facts ¶17. Instead of asking Kodak to discontinue working on the project, it attempted in "good faith" to help Kodak get back on schedule and continued to express to Kodak the need to make efforts to meet the delivery commitments under the agreement. Def. Facts ¶18. It argues that Kodak misrepresented the status of its efforts from the beginning of the project (by inaccurately stating that the design was 90% complete), would not commit to firm delivery dates when delays became more likely, and continued to experience further delays in the project threatening DuPont's relationship with CPT. Def. Facts ¶¶21, Q, R, Y, Z.

In October 2008, after several months of discussions with Kodak and CPT regarding the probability that Kodak would not meet the agreed upon delivery dates, DuPont notified Kodak that Kodak's failure to meet the deadlines constituted a breach of Revision 9. DuPont afforded Kodak 30 days to commit to a firm delivery date or some other plan to cure the default. Def. Facts ¶X. However, as of

November 2008, Kodak could not firmly commit to a delivery date and had not offered another proposal to cure the breach because Kodak did not believe that it was in breach of the contract.  Def. Facts ¶¶ 29, Z 30, BB, CC.

After a thorough review of the record, the Court finds that, while there is no material dispute as to any particular fact, multiple inferences can be drawn from the facts and a reasonable jury could conclude that DuPont did not intend to waive its right to insist on timely delivery under Paragraph D. While DuPont seemingly accepted a delay by not insisting on timely delivery in the first instance and by notifying its customer of a probable delay, the Court does not find that the facts unequivocally point to DuPont's waiver of timely delivery as provided in Paragraph D. A reasonable jury could conclude that, taken together, DuPont's continued insistence, over the course of several months, on the importance of the agreed-upon delivery schedule to DuPont and its customer, CPT, its continued attempts to work with Kodak to get back on track, the assurances from Kodak that it was seeking to do the same, as well as DuPont's willingness to allow Kodak time to cure the breach by proposing and committing to new firm delivery dates, were sufficient to place Kodak on notice that DuPont was not waiving its rights to insist on strict delivery dates, or, at least, to seek some remedy for the breach. See Sethness-Greenleaf, Inc. v. Green River Corp., 65 F.3d 64, 67-68 (7th Cir. 1995)(finding

19

no waiver of right to timely payment by being lenient with late payments initially, and giving notice and allowing 30 days to cure the default); Cf. Wald, 529 N.E.2d at 621 (finding waiver where the non-breaching party knew of a breach shortly after execution of the contract and for several years did nothing to enforce his rights other than to inform the defendants that they were in breach of the agreement).

Accordingly, because the Court cannot conclude that the only inference to be taken from these facts is that DuPont waived its rights under Paragraph D, Kodak's motion for summary judgement on its affirmative defense of waiver is denied.

CONCLUSION

For the reasons discussed herein, the Court finds that DuPont's interpretation of Revision 9, Paragraph D is supported by a plain reading of the contract.  The Court further finds that there are material issues of fact with respect to the issues of materiality and waiver.  Therefore, Kodak's motion for summary judgement is denied in its entirety.

**ALL OF THE ABOVE IS SO ORDERED.**

                                      s/ Michael A. Telesca
                                   MICHAEL A. TELESCA
                                United States District Judge

Dated:     Rochester, New York
           July 26, 2012