UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KODAK GRAPHIC COMMUNICATIONS
CANADA COMPANY, AS SUCCESSOR
TO CREO, INC.,

                      Plaintiff,

                                                 Case # 08-CV-6553-FPG

v.

                                               DECISION AND ORDER

E.I. DU PONT DE NEMOURS AND COMPANY,

                        Defendant.

After a 12-day trial, the jury in this case awarded Plaintiff Kodak Graphic Communications Canada Company ("KGCC") $12,504,253.00 in damages, which was comprised of $11.25 million in damages based upon Defendant E. I. du Pont de Nemours and Company's ("DuPont") termination of the parties' contract, as well as $1,254,253.00 in damages for payments owed to KGCC under the parties' 2008 research and development agreement. After the verdict, the parties agreed upon the appropriate interest calculation to be added to the jury's verdict, and judgment was entered against DuPont in the total amount of $15,631,464.32. Dkt. ## 232, 233.  Presently before the Court are DuPont's motions for (1) judgment as a matter of law under Fed. R. Civ. P. 50(b) or (2) either a new trial or remittitur under Fed. R. Civ. P. 59. Dkt. # 238.  Also before the Court is KGCC's Bill of Costs (Dkt. # 236), to which DuPont objects.  Dkt. # 241.  Finding no basis to disturb the jury's verdict, DuPont's motions for post-trial relief (Dkt. # 238) are denied.  Also finding no reason to deviate from the default rule that costs should be allowed to the prevailing party, DuPont's objections (Dkt. # 241), are overruled.

## DISCUSSION

The proponent of a motion for judgment as a matter of law ("JMOL") under Fed. R. Civ. P. 50(b) faces a "high bar," *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 479 (2d Cir. 2001), and the Second Circuit has cautioned that motions for judgment as a matter of law "should be granted cautiously and sparingly." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001). In ruling on such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence . . .credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citations omitted). In order to grant the application, this Court must find that "a reasonable jury would not have a legally sufficient evidentiary basis to find for" the non–movant. Fed. R. Civ. P. 50(a); *see Cameron v. City of N.Y.*, 598 F.3d 50, 60 (2d Cir. 2010) (The evidence must "so utterly discredit" the non–moving party such "that no reasonable juror could fail to believe the version advanced by the moving party.") (citation omitted).

The rules governing a motion for a new trial under Fed. R. Civ. P. 59 are somewhat less strict, in that the Court may weigh the evidence independently, and need not view it in the light most favorable to the prevailing party. *See Manley v. AmBase Corp.*, 337 F.3d 237, 244–45 (2d Cir. 2003). Unlike a motion for judgment as a matter of law, a motion for a new trial "may be granted even if there is substantial evidence to support the jury's verdict." *United States v. Landau,* 155 F.3d 93, 104 (2d Cir. 1998). Even under this less restrictive standard, the Second Circuit has cautioned that a new trial should not be granted "unless the trial court is convinced

that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Caruolo v. John Crane, Inc.,* 226 F.3d 46, 54 (2d Cir. 2000). In other words, to order a new trial, the Court "must view the jury's verdict as against the weight of the evidence." *Manley,* 337 F.3d at 245 (quotation and citation omitted).

Where the jury has made an error in the amount of a verdict, the Court may order either remittitur – the reducing of the amount awarded – or a new trial. *See Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 435 (1996) ("The role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered.") (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 279 (1989)).

With these standards in mind, the Court turns to the individual claims of error advanced by DuPont.

I.    2008 Research and Development Work Claim

DuPont argues that they are entitled to judgment as a matter of law on KGCC's claim for monies owed under the 2008 research and development ("R&D") claim. Alternatively, DuPont argues that the jury's award of $1,254,253 for the 2008 R&D claim was against the weight of the evidence, because the charges were not approved by DuPont.

During his testimony, former KGCC executive Eran Elizur told the jury the 2008 R&D costs were billed to DuPont because "in 2007 we signed an MOU whereby they said that they will cover all our R and D spending in 2008. All this was part of our spending in 2008 that was

agreed and approved and, therefore, we asked [DuPont] to foot the bill and pay that amount." Tr. at 317, lines 17-21[1].

Elizur then referenced Trial Exhibit # 667, and identified that document as the bill he submitted on behalf of KGCC to DuPont. That document lists the amount due as $1,254,253 – the exact amount that was later awarded by the jury. Elizur was then asked "Of that $1.2 million that was billed, had DuPont previously agreed to pay any of that?" to which he replied, "Well, that was part of the MOU. They said that they would cover all our R and D spending in 2008. So they have agreed." Tr. at 318, lines 3-6.

DuPont argues that the jury's determination should be disturbed by this Court because DuPont did not agree to pay for these amounts, as they argue was testified to by DuPont executive Linda West. Specifically, DuPont cites West's testimony where she was asked "Did you make it very clear [to KGCC] that you did not want any more overruns?" to which she answered "Absolutely. That we had a fixed contract, we had budgets, and that surprises like this were unacceptable . . ." Tr. at 1234-35, lines 24-2. The balance of that sentence – which was deleted in the submissions – continues that "...especially saying it was June and we were talking about something from 2007, six months earlier. It made no sense." Tr. at 1235, lines 2-4. In other words, it appears that West was discussing the 2007 expenses, as opposed to the 2008 expenses at issue.

Regardless, even if West was referring to the 2008 expenses, I find no basis to disturb the jury's determination. While the evidence regarding the 2008 R&D charges was not overwhelming, it was also not insufficient. While DuPont would have the jury (and now the Court) credit Ms. West's testimony over that of Mr. Elizur's, the verdict makes clear that the jury chose to draw the opposite conclusion. That determination of credibility is certainly within the

---

[1] References to "Tr." refer to the trial transcript, which is filed as Dkt. ## 247-258.

province of the jury, and this is not a case where the evidence was so lopsided as to make one version of events patently credible or incredible.

I also reject DuPont's argument that the jury's verdict should be reduced by half, because in KGCC's closing argument, KGCC's counsel argued to the jury that "[KGCC] should have to bear some of the expense of the over run that it incurred. I think that's fair. But I also think it's fair that DuPont would pay half of that, which it had agreed to do a number of times as you saw." Tr. at 1418, lines 12-14.

While KGCC's counsel suggested a compromise to the jury, the jury was certainly free to accept or reject that proposal. Here, the jury decided it was not necessary to compromise the amount billed by KGCC to DuPont, as reflected in Trial Exhibit # 667, and awarded KGCC the full amount billed. On this record, and regarding both the award of damages and the amount awarded, I cannot conclude that "the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Caruolo,* 226 F.3d at 54.

II.    Termination of the Contract

A.    Motion for JMOL Regarding Materiality

DuPont argues that they are entitled to judgment as a matter of law regarding materiality, "because the evidence at trial was undisputed that the timely delivery requirement in Revision 9 was a material term of the parties' agreements." Dkt. #238-1, at 8.

The gist of this argument revolves around the inclusion of a "time is of the essence" provision in the parties' agreement[2]. DuPont argues that provision is essentially determinative, because "where time is of the essence, Illinois courts, tending to be strict constructionists, will enforce the clause and hold that a delay of one day is a material breach." *Elda Arnhold and*

---

[2] The parties' agreement is governed by Illinois Law.

*Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 704 (7th Cir. 2002) (emphasis added). *Id.*

This argument, which was previously made and rejected before Judge Telesca during the summary judgment stage of the case, *see* Dkt. # 117, at 12-15, fares no better at the close of trial. DuPont's quotation from *Arnhold* is an incomplete reading of the case. Just a paragraph before the language quoted by DuPont appears (which, although not noted as such in their papers, is actually the 7th Circuit quoting 12A Illinois Law & Practice §§ 303–05 (1983 & Supp. 2001)), the Seventh Circuit explained that a "time of the essence" provision is not automatically a material term of a contract, but rather held that "even when the parties agree to make timely performance an essential element of the contract, the factfinder must also consider whether the breach was material as to justify the other party's subsequent refusal to perform, based upon the totality of the circumstances." *Arnhold*, 284 F.3d at 704.

As one district court later explained:

> No court's inquiry into the issue now up for consideration can end with the mere recitation of contractual language stating that time is of the essence of the contract. Even where the contract contains such an express clause, it is still necessary to "inquire into the situation of the parties and the underlying circumstances to determine whether a delay in performance resulted in a 'material breach'" (*Anest v. Bailey,* 198 Ill.App.3d 740, 746, 556 N.E.2d 280, 283 (2[d] Dist. 1990) and cases cited there). Thus, before a court acts to enforce such a provision in its strictest sense, it must make a determination of the "intent of the parties with respect to the disputed provision and the equitable factors and circumstances surrounding the breach of the provision," both as taught by *Elda Arnhold & Byzantio.*

*Beverage Realty, Inc. v. Chatham Club, LLC*, No. 01 C 1396, 2003 WL 444572, at *7 (N.D. Ill. Feb. 21, 2003)

In their papers, both parties point to evidence that supports their respective views of the evidence. In my view, there were competing inferences that could have been drawn from the

facts presented by the parties regarding the materiality of the delivery dates in the contract, and those factual disputes are exactly what the jury was called upon to resolve. Judgment as a matter of law is appropriate only where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Further, the Court "may not make credibility determinations or weigh the evidence." *Reeves,* 530 U.S. at 150–51.

Unlike such a case where the evidence is one-sided, in DuPont's words, "this was a close and complex case." Dkt. # 241-1. I fully agree with this statement, which further emphasizes the inappropriateness of granting judgment as a matter of law in this case. Sufficient evidence existed to support the jury's finding that the delivery dates were not material, and there is no basis to set aside the jury's determination in that regard.

### B.    Motion for JMOL Regarding Waiver

Having determined that DuPont is not entitled to judgment as a matter of law regarding materiality, the Motion for Judgment as a Matter of Law regarding waiver is moot. As was discussed and agreed upon, the jury in this case would only determine if DuPont waived compliance with the parties agreement *if* the jury determined that the delivery dates were in fact material terms of the contract. If they were not material – as the jury found – then there was no need to reach the question of waiver. For the same reasons, I decline to reach this issue here, since DuPont is not entitled to judgment as a matter of law on the issue of materiality.

### C.    Claims of Erroneous Jury Instructions

In reviewing jury instructions, the Second Circuit will disturb this court's judgment "only if the appellant shows that the error was prejudicial in light of the charge as a whole." *Japan Airlines Co., Ltd. v. Port Auth. of N.Y. & N.J.,* 178 F.3d 103, 110 (2d Cir. 1999). "A jury

instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 153 (2d Cir. 1997).   In other words, a new trial is unwarranted "[i]f the instructions, read as a whole, presented the issues to the jury in a fair and evenhanded manner." *Lore v. City of Syracuse,* 670 F.3d 127, 156 (2d Cir. 2012).   In reviewing instructions, courts "are not permitted to dissect a jury verdict by combing through a trial court's instructions seeking language that, when isolated from its context, might be or appear to be misleading." *Turley v. ISG Lackawanna, Inc.*, No. 13-561, 2014 WL 7172061, at *7 (2d Cir. Dec. 17, 2014) (quotation and citation omitted).

With these standards in mind, the Court reviews each of the areas in which DuPont claims that the Court's instructions to the jury were erroneous and require a new trial.

### 1.   Time is of the essence

DuPont's primary argument regarding the time of the essence instruction is that the jury was improperly instructed because the Court utilized language from one of the leading cases from the 7th Circuit – and one that has been repeatedly relied upon by the parties throughout this litigation – *Arnhold v. Ocean Atl. Woodland Corp.*, 284 F.3d 693 (7th Cir. 2002).  In *Arnhold*, the Seventh Circuit observed that under Illinois law "a material time-essence provision indicates that substantial but incomplete performance is not the central objective of the contract.  Rather, the deal must be done on time if it may be done at all." 284 F.3d at 705.  In accordance with this holding, the jury here was instructed that

> For the time of the essence clause to be a material part of the contract, you must find that KGCC had to timely deliver the EPS units if it was to be done at all.  If you conclude that delivery of the EPS units did not have to be timely accomplished, if it was to be done at all, then you must declare that DuPont's termination was for convenience, not for cause.  However, if you conclude that timely delivery of the EPS units had to occur, if it was to be done

at all, then you must still determine whether it was equitable for
DuPont to determine the contract on that basis.

Tr. at. 1460-61, lines 17-2.

I find nothing improper about this language, as it merely utilizes the 7th Circuit's holding
to accurately convey the law to the jurors.

DuPont also argues that the Court should not have utilized the pattern charge from
Illinois Forms of Jury Instructions § 12.90 because the contract here included a "time is of the
essence" clause, and according to the instruction's commentary, that instruction could therefore
be inappropriate.  However, as previously discussed, it was an open question in this case whether
or not that language was a material term of the contract, and indeed, the commentary to this
particular instruction explains that the instruction "should be used where there is a factual dispute
as to whether the parties intended that time would be of the essence in their agreement." *Id.*  As
such, I find the instruction was entirely proper under Illinois law.

### 2.     Materiality

Defendants argue that this Court erred in instructing the jury to consider whether it was
fair for DuPont to terminate the contract as part of their determination on the issue of materiality.
I disagree.

As part of the Court's materiality instruction, the Court charged the jury that:

> To determine whether it was equitable for DuPont to terminate the
> contract because of KGCC's failure to timely deliver the EPS
> units, you must examine the totality of the circumstances at the
> time of termination and determine the inherent justice of the
> matter.

Tr. at 1462, lines 9-13.

While the exact language used by the Court in its final instructions is not verbatim from a
pattern instruction book, that is of no moment.   It is well settled that district courts enjoy

considerable "discretion in the style and wording of jury instructions so long as the instructions, taken as a whole, do not mislead the jury as to the proper legal standard, or adequately inform the jury of the law." *Boyce v. Soundview Tech. Group, Inc.*, 464 F.3d 376, 390 (2d Cir. 2006) (citation omitted).

Here, the challenged instructions easily pass that test. There can be no doubt that the equities, inherent justice, and fairness are an important part of the materiality determination. Indeed, Illinois courts routinely list fair dealing as part of the materiality inquiry. *See, e.g., Rubloff CB Machesney, LLC v. World Novelties, Inc.,* 363 Ill. App. 3d 558, 564, 844 N.E.2d 462 (2d Dist. 2006) (listing several factors relating to a finding of materiality, including the extent to which behavior comports with standards of good faith and fair dealing).

The law regarding materiality was recently summarized by Judge Kendall in the Eastern District of Illinois as follows:

> Under Illinois law, the materiality of a breach "focuses on two interrelated issues: (1) the intent of the parties with respect to the disputed provision; and (2) the equitable factors and circumstances surrounding the breach of the provision." *Arnhold,* 284 F.3d at 700. The first element requires the fact finder to determine whether "the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it." *Arrow Master, Inc. v. Unique Forming Ltd.,* 12 F.3d 709, 715 (7th Cir. 1993); *see also Arnhold,* 284 F.3d at 700. The course of negotiations among the parties is relevant to the parties' intent. *See id., see also Sahadi v. Continental Illinois Nat. Bank and Trust Co. of Chicago,* 706 F.2d 193, 197 (7th Cir. 1983). The second element requires the fact finder to "take into account the totality of the circumstances and focus on the inherent justice of the matter." *Arnhold,* 284 F.3d at 700. The focus should be on factors such as "whether the breach defeated the bargained-for objective of the parties; whether the non-breaching party suffered disproportionate prejudice; and whether undue economic inefficiency and waste, or an unreasonable or unfair advantage would inure to the non-breaching party." *Id.* (citing *Arrow Master,* 12 F.3d at 715).

*Freight Train Adver., LLC v. Chicago Rail Link, L.L.C.*, No. 11 C 2803, 2013 WL 2422634, at *12 (N.D. Ill. May 31, 2013)

Yet another source, the commentary to the Illinois pattern instruction regarding a material breach, similarly discusses the concepts of equity, inherent justice, and fairness:

> The determination of whether a breach is material depends upon consideration of several factors, including the intent of the parties with respect to the disputed provision and the equitable factors and circumstances surrounding the breach of the provision. *Maywood Proviso State Bank v. York State Bank & Trust Co.*, 252 Ill. App. 3d 164, 625 N.E.2d 83 (1st Dist. 1993); Restatement (Second) of Contracts § 241 (1981); *see Arnhold v. Ocean Atlantic Woodland Corp.*, 284 F.3d 693 (7th Cir. 2002).
>
> …
>
> The question of "whether a breach is material, thereby discharging the other party's duty to perform, is based on the inherent justice of the matter. The determination of 'materiality' is a complicated question of fact, involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal nonperformance by the non-breaching party will result in his accrual of the unreasonable or unfair advantage." *Kel-Keef Enters., Inc. v. Quality Components Corp.*, 316 Ill. App. 3d 998, 250 Ill.Dec. 308 (1st Dist. 2000).

Although they now complain about the Court's instructions, DuPont's own proposed jury instructions embraced this concept. In their submissions, DuPont requested that the Court have the jurors consider "the intent of the parties . . .and the equitable facts and circumstances surrounding the breach of the provision." Dkt. # 223, at 24. They further requested the Court to expand upon this, requesting the following charge:

> "In considering the equitable facts and circumstances, you may consider whether the breach defeated the bargained-for objectives of the parties, whether the non-breaching party suffered disproportionate prejudice, and whether undue economic inefficiency and waste, or an unreasonable or unfair advantage

> would inure to the non-breaching party. You may also consider the
> extent to which the behavior of the party failing to perform
> comports with standards of good faith and fair dealing."

Dkt. #223, at 24-25.

During the charge conference, counsel for DuPont agreed that an instruction that told the jury that "to determine whether it was equitable for DuPont to terminate the contract, you must examine the totality of the circumstances at the time of termination and determine the inherent justice of the matter" would "make[] perfect sense …That's the law …" Tr. at 1333. Indeed, counsel's only objection to this passage was that it contained a reference to delivery dates, which he characterized as being argumentative. A modification was made to the delivery date passage, but the balance was presented to the jury because in the Court's view, and as stated by DuPont's counsel, "[t]hat's the law." *Id.* Having requested and endorsed the essence of the instruction, DuPont cannot now be heard to complain about the instruction.

Further, although DuPont argues that the Court's instruction is not an accurate statement of the law, in DuPont's present Motion, they argue just the opposite. In asking the Court to grant judgment in their favor, they tacitly admit that the jury should consider the fairness of the matter in making their materiality determination by arguing to this Court that "the equitable factors surrounding KGCC's breach and DuPont's termination of the Agreement further support DuPont's entitlement to judgment as a matter of law." Dkt. #238-1, at 11.

In sum, DuPont has waived any challenge to the materiality instruction regarding the jury's consideration of fairness or equitable factors surrounding the termination, but in any event, ample authority exists to demonstrate that the Court's jury charge regarding materiality accurately conveyed the appropriate legal standard to the jury, and as a result, there is no basis for relief on this claim.

3.    Judge Telesca's Prior Ruling

DuPont argues that the Court should have read greater portions of Judge Telesca's prior decision on KGCC's Motion for Summary Judgment, and because of this, the jury was incorrectly instructed on the law. I disagree.

In his decision, Judge Telesca found that the contract between DuPont and KGCC was indeed breached, but that summary judgment was inappropriate because multiple inferences could be drawn from the parties' prior communications and conduct. DuPont now protests that this Court did not specifically instruct the jury that Judge Telesca previously held that "Revision 9, Paragraph D does not contemplate that delays in delivery would be acceptable." Dkt. #238-1, at 20.

The jurors were instructed that:

> This Court has already determined as a matter of law that KGCC breached the terms of the agreement and Revision 9 by failing to deliver the EPS machines by the delivery deadlines set out in Revision 9. You must accept this ruling as part of your analysis. However, this does not conclude your analysis.

The issues for you to decide with respect to the agreement and Revision 9 are:

> 1: Whether the delivery deadlines were material terms of the agreement, such that KGCC's breach of the agreement was a material breach.
>
> And 2: Whether DuPont unequivocally waived its right to insist on timely delivery.

Tr. at 1457, lines 3-14.

Indeed, this statement of the issues to be determined was almost a verbatim recitation of how DuPont described the issues remaining to be resolved by the jury. In their pretrial filings, DuPont wrote that:

> Accordingly, with respect to the Agreement and Revision 9, the issues that remain to be decided at trial are: (1) whether the

> delivery deadlines in Revision 9 were material terms of the parties'
> agreement, such that KGCC's breach of the Agreement was a
> material breach; and (2) whether DuPont unequivocally waived its
> right to insist on timely delivery.

Dkt. # 154, at 3.

Despite DuPont's attempt to now recast the issue in this case as being about any breach, the history of this litigation makes abundantly clear that the issue was whether the delivery deadlines were material, such that a breach of those terms would constitute a material breach of the parties' agreement.   The jurors were instructed several times that a breach had occurred, and that they must accept the Court's ruling in that regard.   Although DuPont argues that different language was required – notwithstanding the fact that the ultimate language used was essentially DuPont's – that argument is of no moment, since the instructions adequately conveyed to the jury the correct confines of the determination they were required to make.   As a result, the claim for relief is without merit.

### 4.   Termination and Delivery Dates

DuPont argues that the jury instructions "improperly limited DuPont's available grounds for termination for cause to the timely delivery requirement alone, preventing the jury from considering the other grounds supporting termination for cause." Dkt. # 238-1, at 20.   This argument deserves little discussion.   As previously stated, DuPont itself described the issue for the jury as being "whether the delivery deadlines in Revision 9 were material terms of the parties' agreement, such that KGCC's breach of the Agreement was a material breach." Dkt. # 154, at 3. That question – whether or not the delivery deadlines were material – is exactly what the jury was asked to determine in this case, which in my view, especially in light of the parties'

prior submissions, was the correct question.   DuPont's belated attempt to recast the issue is simply without merit.

### 5.   Future Performance

DuPont's argument that this Court should have instructed the jury on future performance is nothing more than a rehashing of an argument that has been presented – and rejected – numerous times over the course of this litigation.   Magistrate Judge Payson denied DuPont's request to modify their counter claim to include this claim on September 23, 2011 (Dkt. # 93), and that decision was affirmed by Judge Telesca on December 28, 2011 (Dkt. # 100).   During the final pretrial conference on October 17, 2013, this Court re-affirmed the decisions of Judge Telesca and Magistrate Judge Payson in granting KGCC's *in limine* motion to preclude the defense of future performance or anticipatory repudiation.   Dkt. # 197.   I see no error in any of those decisions that would entitle DuPont to the relief it now seeks.

For all of these reasons, each of DuPont's claimed errors in the jury instructions are without merit and provide no basis to disturb the jury's verdict.

### D.   Damages Awarded by the Jury

DuPont seeks to reduce the jury's damages award from $11.25 million to $10 million, based upon language contained in the 2002 Agreement between the parties.   The specific provision relied upon by DuPont in the 2002 Agreement provides that:

> If DUPONT terminates this Agreement for reasons other than a default or breach of a material term of this Agreement by CREO, DUPONT will pay to CREO, together with any amounts accruing or payable prior to the termination, a reasonable termination charge consisting of (a) actual costs of raw and scrap materials, labor, overhead and related subcontracts that has been incurred and documented since the last paid milestone; and (b) Five hundred thousand (US$ 500,000.00) dollars. In no event shall such termination charge exceed US$ 10,000,000.00.

Trial Exh. #2, at ¶ 16.3.

If the 2002 Agreement embodied the entire agreement between the parties on this issue, then any recovery by KGCC would clearly be capped at $10 million. However, the parties subsequently executed several revisions to that 2002 Agreement. Pertinent here is the ninth such revision, which was executed in November of 2007. Revision 9, according to the cover pages evincing the parties assent, is to "be read and construed along with the [2002] Agreement and be treated as part thereof …" Trial Exh. 410, at ¶ 4. It further provides that "[i]n the case of any conflict between the terms and conditions of the [2002] Agreement and the terms or conditions of this Ninth Amendment, the terms and conditions of this Ninth Amendment will prevail." *Id.*, at ¶ 5.

Section G of Revision 9, entitled "Cancellation," provides that:

> In the event that DuPont cancels all or part of the order as set forth in this Ninth Amendment, KGCCC will make commercially reasonable efforts to stop the project and minimize cancellation costs incurred. DuPont will be liable for all costs including third party cancellation costs that KGCCC has incurred up to and including the date of cancellation. Additionally, DuPont will reimburse KGCCC up to $1.5MM for cost directly associated with the EPS project that may occur as a result of the cancellation of Ninth Amendment.
>
> If above cancellations costs are less than DuPont's initial payment, KGCCC will reimburse to DuPont the difference between actual cancellation costs incurred and the 35% down payment.
>
> If KGCCC cancels, DuPont will be reimbursed all monies paid for the project.

*Id.*, at ¶ G.

These two provisions cannot be harmonized, in that you cannot receive "all costs" while simultaneously being limited to $10 million, and as such, Revision 9 controls. While the $10 million cap was present in the 2002 Agreement, no such limitation is present in Revision 9, and

instead, the parties agreed in Revision 9 to ensure that in the event DuPont cancelled the contract, DuPont would "be liable for *all* costs including third party cancellation costs that KGCCC has incurred up to and including the date of cancellation." (Emphasis added). As a result, I find no reason to reduce the jury's award to the outdated cap that existed in the 2002 Agreement.

III.    Bill of Costs

Finally, DuPont argues that the Court should deny KGCC's Bill of Costs, because the case was close, and the parties dealt with each other in good faith. Dkt. # 241. While recognizing that the award of costs is within my discretion, I decline to accept DuPont's invitation.

The default rule in this circuit regarding the award of costs is that "[a]s a general matter, costs – other than attorney's fees – should be allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1). The Rule codifies a venerable presumption that prevailing parties are entitled to costs." *Carter v. Incorporated Village of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014), quoting *Marx v. Gen. Revenue Corp.*, --- U.S. ----, 133 S. Ct. 1166, 1172 (2013) (internal quotation marks omitted). Further, "the decision to award costs under Rule 54(d)(1) is committed to the sound discretion of the district court." *Carter*, 759 F.3d at 164 (internal quotation and citation omitted).

There is no dispute that the parties in this case dealt with each other in good faith, and after the jury rendered their verdict, I stated that "[B]oth sides have been very professional throughout this trial. Some of the best trial lawyers I've had in my experience of 25 years as a trial judge. So it's really been a pleasure trying it with you, including the cooperation that you exhibited between each other . . ." Tr. 1499-1500, lines 23-2. While not minimizing the exceptional skill, professionalism, and cooperative attitudes of the attorneys who tried this case,

that fact, even when combined with the fact that the case was close and either party could have prevailed, does not sway me to deviate from the default rule that costs should be awarded to the prevailing party.

DuPont has not raised any specific objections to individual costs or amounts claimed by KGCC, other than interposing their general argument that costs should not be awarded at all. After reviewing KGCC's Bill of Costs (Dkt. # 236), DuPont's objections are overruled, and the Clerk of the Court is directed to tax costs in this action against DuPont, and in favor of KGCC, in the requested amount of $26,612.79.

## CONCLUSION

For all of the foregoing reasons, DuPont's Motion for Judgment as a Matter of Law, for a New Trial, or for Remittitur (Dkt. # 238), is DENIED, and DuPont's Objections to KGCC's Bill of Costs (Dkt. # 241) are OVERRULED.  The Clerk of the Court shall tax costs against DuPont in the amount of $26,612.79.

IT IS SO ORDERED.

Dated: January 5, 2015
      Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge