MANDATE

15-318-cv
Kodak Graphic Commc'ns Can. Co. v. E. I. du Pont de Nemours & Co.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of February, two thousand sixteen.

PRESENT: REENA RAGGI,
DENNY CHIN,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

--------------------------------------------------------------------------
KODAK GRAPHIC COMMUNICATIONS CANADA CO.,

*Plaintiff-Counter-Defendant-Appellee*,

v.  No. 15-318-cv

E. I. DU PONT DE NEMOURS & CO.,
*Defendant-Counter-Claimant-Appellant*.
--------------------------------------------------------------------------

APPEARING FOR APPELLANT: STEPHANIE E. NIEHAUS, Squire Patton Boggs LLP, Cleveland, Ohio (Damond R. Mace, F. Maximilian Czernin, Squire Patton Boggs LLP, Cleveland, Ohio; Adam H. Charnes,

1

MANDATE ISSUED ON 04/11/2016

|  |  |
|---|---|
|  | Kilpatrick Townsend & Stockton LLP, Winston-Salem, North Carolina, *on the brief*). |
| APPEARING FOR APPELLEE: | ERIC J. WARD (Jeffrey J. Harradine, Jessica N. Clemente, *on the brief*), Ward Greenberg Heller & Reidy LLP, Rochester, New York. |

Appeal from a judgment and order of the United States District Court for the Western District of New York (Frank P. Geraci, Jr., *Chief Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the December 13, 2013 judgment and January 6, 2015 order of the district court are AFFIRMED.

Defendant E. I. Du Pont de Nemours & Co. ("DuPont") appeals from an order entered after judgment denying its motions for a new trial, see Fed. R. Civ. P. 59, judgment as a matter of law, see Fed. R. Civ. P. 50(b), and remittitur following a $12,504,423 jury award in favor of plaintiff Kodak Graphic Communications Canada Co. ("Kodak") in this contract dispute. "We review a denial of a Rule 50(b) motion de novo and the denial of a Rule 59 motion for abuse of discretion." Hicks v. Tug PATRIOT, 783 F.3d 939, 942 (2d Cir. 2015). In conducting our review, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1. Rule 59 Motion for a New Trial

DuPont claims that the following errors warrant a new trial: (a) erroneous or omitted jury instructions as to (1) the relevant contract's "time is of the essence" clause,

2

(2) materiality, and (3) future performance; (b) improper limitation of the grounds for DuPont's permissible termination of the contract; and (c) improper admission of expert testimony. Viewing the evidence in the light most favorable to Kodak, see Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150–51 (2000), we discern no error, let alone abuse of discretion, in the district court's denial of the motion for a new trial, see Meloff v. New York Life Ins. Co., 240 F.3d 138, 147 (2d Cir. 2001).

    a.    Jury Instructions

While we review challenges to jury instructions in civil cases de novo, we will identify error in the denial of a new trial only if the charging defect was prejudicial in light of the overall charge. See Rasanen v. Doe, 723 F.3d 325, 331 (2d Cir. 2013).

    (1)    Time Is of the Essence

DuPont argues that the district court erred in instructing the jury that it could find "the time of the essence clause to be a material part of the contract" only if it found that Kodak "had to timely deliver the EPS units if it was to be done at all." J.A. 1420.[1]

---

[1] The district court instructed the jury:

> Revision 9 states, among other things, that time is of the essence. Generally time requirements in contracts are accessory rather than central aspects of contracts. Thus, even where a contract contains an express clause stating that time is of the essence, you must still inquire into the situation of the parties and the underlying circumstances to [determine] whether a delay in performance resulted in a breach of a material term.
>
> A time is of the essence clause that is not a stand[-]alone, essential element of a contract, but instead is intended simply to facilitate the main purpose of the contract, is not itself a material term.

3

DuPont argues that this formulation did not allow the jury to accord proper weight to the contract's "time is of the essence" clause.

This argument is foreclosed by the governing Illinois law, under which "the materiality inquiry focuses on two interrelated issues: (1) the intent of the parties with respect to the disputed provision; and (2) the equitable factors and circumstances surrounding the breach of the provision." Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp., 284 F.3d 693, 700 (7th Cir. 2002) (collecting cases). Thus, "even when the parties agree to make timely performance an essential element of the contract, the factfinder must also consider whether the breach was material as to justify the other party's subsequent refusal to perform, based upon the totality of the circumstances." Id. at 704; see also 14 Williston on Contracts § 43:7 (4th ed. rev. 2015) ("[T]he mere fact that the contract contains the standard or boilerplate 'time is of the essence' clause is not

---

> You must determine whether timely delivery of the EPS units was essential. If a contractual obligation can be performed as well at one time as another, time is not essential.
>
> On the other hand, time is essential if because of the subject matter or terms of the contract, or due to fluctuations in value, one party will incur substantial injury or financial loss due to delayed performance by the other, unless time is treated as essential.
>
> If it is essential that performance take place at the agreed time, a late performance or offer of performance may be rejected.
>
> For the time of the essence clause to be a material part of the contract, you must find that [Kodak] had to timely deliver the EPS units if it was to be done at all.

J.A. 1419–20.

determinative although it is a factor to be considered along with other circumstances in determining whether the delay should be considered a material breach."). Nor do we identify error in the district court's instruction for the jury to answer the question of whether Kodak "had to timely deliver the EPS units if it was to be done at all." J.A. 1420; see Sahadi v. Continental Ill. Nat'l Bank & Tr. Co. of Chi., 706 F.2d 193, 198 (7th Cir. 1983) (characterizing "the 'materiality' question" under Illinois law as asking whether term's "performance was a sine qua non of the contract's fulfillment").

    (2)    Materiality

DuPont argues that there is a distinction between "the equitable facts and circumstances surrounding the breach of the [delivery] provision," which it contends is the correct inquiry, and whether "'given all the circumstances it was fair for DuPont to terminate the entire agreement,'" as the district court charged the jury. Appellant Br. 37 (quoting J.A. 1423). The argument presents only a linguistic quibble, not a legal error, much less one causing prejudice. See Boyce v. Soundview Tech. Grp., Inc., 464 F.3d 376, 390 (2d Cir. 2006) (recognizing trial court's "discretion in the style and wording of jury instructions so long as the instructions, taken as a whole, do not mislead the jury as to the proper legal standard, or adequately inform the jury of the law" (internal quotation marks omitted)). That conclusion is only reinforced by the district court's express invocation elsewhere of "[t]he equitable facts and circumstances surrounding the breach of the provision," J.A. 1422; see also id. (instructing jury to "examine the totality of the circumstances at the time of termination and determine the inherent justice of the matter").

5

      (3)     <u>Future Performance</u>

DuPont protests the district court's failure to instruct the jury on the defense theory that Kodak anticipatorily repudiated the contract by failing to give adequate assurances of future performance. DuPont cannot show prejudice from the omission because, under Illinois law,

> The doctrine of anticipatory repudiation requires a clear manifestation of an intent not to perform the contract on the date of performance. The failure of the breaching party must be a total one which defeats or renders unattainable the object of the contract. That intention must be a definite and unequivocal manifestation that he will not render the promised performance when the time fixed for it in the contract arrives. Doubtful and indefinite statements that performance may or may not take place are not enough to constitute anticipatory repudiation.

<u>In re Marriage of Olsen</u>, 124 Ill. 2d 19, 24, 528 N.E.2d 684, 686 (1988) (citations omitted). The evidence here shows no such clear and definite manifestation. Rather, it shows Kodak was equivocal as to the final delivery date, which the jury determined was not a material term of the contract. <u>See</u> J.A. 3429. Moreover, given Kodak's expression of its contrary view of its contractual obligations—namely, that it was required only to make commercially reasonable efforts to meet the schedule set out in ¶ D of Revision 9, and that it would continue to do so, <u>see id.</u> at 2476—DuPont cannot show anticipatory repudiation. <u>See</u> <u>In re Marriage of Olsen</u>, 124 Ill. 2d at 24, 528 N.E.2d at 686 ("Where the two contracting parties differ as to the interpretation of the contract or as to its legal effects, an

offer to perform in accordance with his own interpretation made by one of the parties is not in itself an anticipatory breach." (quoting 4 Corbin on Contracts § 973, at 911–12 (1951))).

  b. Grounds for Termination

DuPont argues that the district court erred in focusing the jury's attention on untimely delivery as the breach that might justify DuPont's cancellation of the contract, as opposed to other potential breaches. DuPont waived this argument by proposing a jury instruction that identified untimely delivery as the potentially material breach, see J.A. 1223 ("[T]he EPS machines were not delivered by the dates specified in the contract . . . ."); id. ("[Kodak] breached the terms of the contract by failing to deliver the EPS machines by the delivery deadlines in the contract without first having obtained a signed modification . . . ."); id. at 1224 ("DuPont claims that timely delivery was a material term of the contract, that time was of the essence, and that it did not waive the right to timely delivery."), and requesting at the charge conference that the jury be so instructed, see id. at 1291 ("So it would read DuPont disputes this and claims that its termination was for cause because timely delivery of the EPS units was a material term of the contract."). A party cannot be heard to complain on appeal of a jury instruction that it requested. See United States v. Quinones, 511 F.3d 289, 320–21 (2d Cir. 2007).

  c. Expert Testimony

DuPont faults the district court's admission of testimony from two Kodak experts regarding certain financial documents and trends in the relevant market. DuPont has identified neither abuse of discretion nor prejudice from the admission of the expert

7

testimony. See Lore v. City of Syracuse, 670 F.3d 127, 155 (2d Cir. 2012) (holding that admissibility decisions will be sustained unless manifestly erroneous and new trial granted only when such error affects adversary's substantial rights). While a juror could look at a net present value analysis and see a positive or a negative number, the district court acted within its discretion in concluding that expert testimony could help the jury understand the provenance and significance of such numbers in DuPont's internal documents. See United States v. Diaz, 878 F.2d 608, 617–18 (2d Cir. 1989) (upholding admission of expert testimony that "provided interpretation of the financial records"). Similarly, the district court did not abuse its discretion in admitting expert testimony as to conditions in the relevant market and their effect on DuPont given its production cycles.

In sum, because DuPont has identified no error in the trial court's jury instructions or abuse of discretion in its evidentiary rulings, its new trial motion was correctly dismissed as without merit.

2. <u>Motion for Judgment as a Matter of Law</u>

A court may set aside a jury verdict "only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." Cross v. New York City Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005) (alterations and internal quotation marks omitted). DuPont argues that this burden is met as to a portion of the jury's damage award, specifically $1,254,253 awarded to Kodak for

8

its 2008 research and development ("R&D") expenses because the governing contract explicitly precluded cost overruns. The jury, however, was entitled to find that Revision 11, which prohibited cost overruns, was not the governing contract for those expenses, but, rather, an earlier Memorandum of Understanding ("MOU"), which rendered DuPont liable for all 2008 R&D costs. Revision 11 spoke to seven specific categories without explicitly stating that those represented the totality of 2008 R&D. See J.A. 2704–05. The jury was presented with invoices billing certain R&D costs specifically under Revision 11 and others generally under the MOU, as well as competing testimony as to whether Revision 11 superseded the MOU or each remained in force, applicable to different categories of R&D. On this record, DuPont was not entitled to judgment as a matter of law.

3. <u>Remittitur</u>

DuPont finally argues that its liability should be capped at $10,000,000 on the basis of the 2002 Agreement, which states that if DuPont terminated the contract in the absence of Kodak's breach, DuPont would be liable for "a reasonable termination charge consisting of costs" and an additional $500,000, but "[i]n no event shall such termination charge exceed US $10,000,000." J.A. 2635–36. The district court, however, found this provision superseded by Revision 9, which states,

> In the event that DuPont cancels all or part of the order as set forth in this Ninth Amendment, [Kodak] will make commercially reasonable efforts to stop the project and minimize cancellation costs included. DuPont will be liable for <u>all costs</u> including third party cancellation costs that [Kodak] has incurred up to and including the date of cancellation. Additionally, DuPont will reimburse [Kodak]

9

> up to $1.5MM for cost directly associated with the EPS project that may occur as a result of the cancellation of [the] Ninth Amendment.

J.A. 2698 (emphasis added); see <u>Kodak Graphic Commcn's Can. Co. v. E. I. du Pont de Nemours & Co.</u>, No. 08-CV-6553-FPG, 2015 WL 74183, at *9 (W.D.N.Y. Jan. 6, 2015).

The district court correctly identified irreconcilable cancellation cost reimbursement structures in these two provisions. DuPont urges us to mix and match provisions, such that the $500,000 charge is replaced by the $1,500,000 reimbursement for Revision 9 expenses alone, but the $10,000,000 cap remains in place. In interpreting a single contract we must strive to harmonize and to give effect to all provisions, but that principle of interpretation does not mandate combining two clauses where a subsequent agreement expressly supersedes an earlier one to the extent they conflict. See <u>In re Halas</u>, 104 Ill. 2d 83, 92, 470 N.E.2d 960, 964 (1984) (giving effect to paragraph in amending agreement where "clearly inconsistent" with competing provision in earlier agreement). That being the case here, DuPont fails to demonstrate legal error in the district court's denial of remittitur.

4. <u>Conclusion</u>

We have considered DuPont's remaining arguments, and we conclude that they are without merit. Accordingly, the judgment and order of the district court are AFFIRMED.

> FOR THE COURT:
> CATHERINE O'HAGAN WOLFE, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

_____

  At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of April, two thousand and sixteen.

_____

Kodak Graphic Communications Canada
Company, as Successor to Creo Inc.,

  Plaintiff-Counter-Defendant-Appellee,

v.

E.I. Du Pont De Nemours and Company,

  Defendant-Counter-Claimant-Appellant.
_____

**STATEMENT OF COSTS**
Docket No. 15-318

  IT IS HEREBY ORDERED that costs are taxed in the amount of $213.80 in favor of the Appellee.

  For the Court:

  Catherine O'Hagan Wolfe,
  Clerk of Court

